WILLIAM F. MITCHELL *et al.*, Respondents, *v.* SAMUEL PEOPLES *et al.*, Appellants.

1. *Conveyances — Married women — Acknowledgments — Justice of the peace act, 1855.*—Under the act of 1855 (R. C. 1855, p. 363, § 37) a justice of the peace had authority to take the acknowledgment of a married woman to a deed conveying her own real estate. (West v. Best, 28 Mo. 551, overruled.)

*Appeal from Fourth District Court.*

*Day & Blair*, for appellants.

*Lipscomb & Givens*, for respondents.

CURRIER, Judge, delivered the opinion of the court.

This is an ejectment suit for a parcel of land in Clark county. At the trial it was " agreed that the plaintiffs and defendants claimed under a common title, to-wit: under and from Elgelina Combs, formerly Elgelina Mitchell, and wife of Harvey Combs; that said Elgelina died on or about the 17th day of December, 1862, without issue, leaving the plaintiffs her heirs at law."

In the progress of the case, the defendants, in order to show title in themselves derived from Mrs. Combs, offered in evidence a deed, duly executed by Mr. and Mrs. Combs, dated November 20, 1862, which purported to convey the disputed premises to one George Layman, a grantee in the defendants' chain of title. The deed was objected to and excluded, as unacknowledged on the part of Mrs. Combs. The acknowledgment of Mrs. Combs appended to the deed appeared to have been taken and certified in due form by a justice of the peace of the county where the land lies. The objection was that an acknowledgment of a married woman, taken by a justice of the peace, was unauthorized, and therefore void and of no force or effect; and so the court held, ruling out the deed. Whether this ruling was correct is the only point presented for consideration upon the record before us.

I should feel no embarrassment in disposing of the case but for the decision of Judge Scott in West v. Best, 28 Mo. 551, where it is declared in the opinion of the court, that under the act of 1855 (R. C. 1855, p. 363, § 37) a justice of the peace had no authority to take the acknowledgment of a married woman to a deed conveying her own estate. The decision of the court below was in accordance with that ruling, and must consequently be affirmed, unless the decision in West v. Best on this particular point is overruled. Ought that to be done? In my opinion, a fair interpretation of the statute and the most manifest ends of justice demand it.

It is not, perhaps, entirely certain that Judge Scott expressed the views of a majority of the court upon the point under review. He assigns various reasons for a reversal of the judgment he was considering, and among them the supposed non-authority of a

justice to take the acknowledgment of a particular deed which appeared in the case. It is clear that some of the reasons assigned were deemed unsound by Judge Richardson, for he gives a very guarded assent to the result reached, impliedly disclaiming responsibility for the accuracy of the grounds on which the decision was placed. He simply concurs in the result without giving assent to the reasons assigned for it.

Judge Napton concurred generally, and it should, perhaps, be taken that he assented to the views of Judge Scott in regard to the supposed want of authority in the justice to take the acknowledgment. However this may be, I am of the opinion that the case, as to that particular point, should be re-examined.

The question raised involves a construction of section 37 of the act of 1855. (R. C. 1855, p. 363, § 37.) That the terms of the act were broad enough to include justices of the peace as among the officers who were thereby authorized to take the acknowledgments of married women, the opinion in West v. Best admits. The difficulty in the mind of the judge delivering the opinion seemed to be that the terms were too broad and comprehensive, and he refuses to be bound by " any general terms," however pertinent and applicable to the subject of the act. He says that he will not " presume that by any general terms that was unfixed which had been made firm and stable." But the Legislature is at liberty to declare its will in whatever terms it may choose to select. The true point of the inquiry is, what did the Legislature mean by the terms it employed? A little attention to the history of legislation on this subject will, in my judgment, make its meaning very evident, and will show, beyond reasonable doubt, that the Legislature intended, by the act of 1855, to make a change in the law, and thereby to empower a class of officers to take the acknowledgments of married women, who had not previously been clothed with that authority.

The revision of 1845 (R. S. 1845, p. 225, §§ 35, 37) contained the following sections, to-wit:

" SEC. 35. A married woman may convey any of her real estate, by any conveyance thereof, executed by herself and husband, and acknowledged by such married woman, and certified

in the manner hereinafter prescribed, by some court having a seal, or by some judge, justice, or clerk thereof."

\*      \*      \*      \*      \*      \*      \*

"SEC. 37. Any court, judge, or clerk authorized by this act to take the proof or acknowledgment of any instrument in writing that conveys any real estate, or whereby any real estate may be affected in law or equity, may take and certify the acknowledgment of a married woman to any such conveyance of her real estate."

These sections seem somewhat repetitious, but the primary object of the first evidently was to authorize a married woman to convey her real property by joining her husband in a deed of it, and the sole and only object of the second manifestly was to point out and designate the officers who might take such married woman's acknowledgment. The latter section has no other aim or purpose, and whoever was authorized to act under its provisions was authorized to take the required acknowledgment.

The revision of 1855 contains these indentical sections, with some additional sections embraced therein. (R. C. 1855, p. 362, §§ 35, 37.) Let us attend to the additions or amendments.

Section 35 of the revision of 1845 is so amended by the act of 1855 as to authorize a married woman to convey by attorney a power which had not previously been granted. The tendency of legislation was not to embarrass but to facilitate alienations by married women.

In exact accordance with this tendency, section 37 of the act of 1845 was amended by the act of 1855 so as to facilitate the execution of deeds by married women, by authorizing officers *other* than those specified in section 37 of the act of 1845, to take and certify her acknowledgment. The section, as amended by the act of 1855, reads thus:

"SEC. 37. Any court, judge, justice, or clerk thereof, or *other officer*, authorized by this act to take the proof or acknowledgment of *any* instrument in writing that conveys any real estate, or whereby any real estate may be affected in law or equity, may take and certify the acknowledgment of a married woman to any such conveyance of her real estate, or to any power of attorney authorizing the conveyance of the same."

The words " or other officer," and the words " or to any power of attorney authorizing the conveyance of the same," are new, and were introduced into the section for the first time in the revision of 1855, and constitute the amendments of it then enacted.

On turning to the seventeenth section of the same act it will be found that "justices of the peace of the county in which the real estate conveyed or affected is situated" may, under the authority of that section, "take the proof or acknowledgment" of conveyances of real property in their respective counties. It is clear to my mind, therefore, that it was the intention of the Legislature, by the act of 1855, amending the prior act, to furnish to married women fresh facilities for the conveyance of their real property, and to relieve them from the necessity and inconvenience of resorting in all cases to some officer of a court of record to take and certify their acknowledgments. Any other construction makes the amendment of section 37 utterly ineffectual and nugatory — in effect repeals the statute to that extent.

In vindication of the views expressed in West v. Best, Judge Scott draws attention to the fact that " justices of the peace had never had, under our statute laws, authority to take the acknowledgments of a conveyance passing the title of a married woman to her land." What possible force can there be in that objection? It is because and for the reason that justices had never before had the authority in question that the Legislature interposed and changed the law in that respect, and conferred a power upon them that they had never before enjoyed. Had they previously possessed the power, there would have been no occasion for amending the law on that subject.

Again, the opinion under review derives the power to take the acknowledgment of a married woman exclusively from the thirty-fifth section; whereas that power is clearly granted in the thirty-seventh section. It is the latter section that is devoted exclusively to that one specific matter, and that undertakes to designate the officer who shall be authorized to act in such cases. It is a little remarkable that its provisions should have been so completely ignored.

Subsequent legislation reflects some light upon the question of the intention of the Legislature in enacting the amendments of

1855. The decision in West v. Best was made in July, 1859. At the adjourned session of 1863 (Adj. Sess. Acts 1863, p. 27) the attention of the Legislature was drawn to it, and an act was at once passed completely overruling the effect of that decision as to the future, which aimed to cure the possible mischief of it in the past. It undertook to ratify and confirm acknowledgments of married women taken before justices of the peace and notaries public, under the act of 1855. As to its efficiency in this direction we express no opinion.

In 1865 the Legislature recurred to the subject again. The law was remodeled as regards the form in which it was expressed, and the various provisions running through sections 17, 35, 37, and section 1 of the act of February 15, 1864, conferring power on different officers to take acknowledgments, were condensed and combined in one section (Gen. Stat. 1855, p. 444, § 9); the authority of justices and notaries to act in such cases being carefully preserved and continued. There is no longer any chance of misunderstanding the will of the law-making power on this subject.

If, however, the decision in West v. Best had become a rule of property in any such sense that a reversal of it would necessarily or probably lead to a disturbance and unsettling of titles, then it should probably stand, however erroneous the original decision might be esteemed to have been. But a reversal can have no such effect. On the contrary, a reversal will serve rather to quiet titles and confirm purchasers in their honest possessions, as the present litigation tends to assure us. In my view, that consideration justifies me in recommending the reversal of a ruling not only erroneous, but productive of what I deem wrong and injustice. I am clearly of the opinion that the decision under review, upon the specific point in question, was erroneous; that it misrepresented the statute, and that an affirmance of it will tend rather to disturb than to settle titles. I therefore recommend that the judgment of the court below which was founded upon that decision be reversed, and that the cause be remanded for a re-trial in accordance with the views herein declared. The other judges concur.